FARMER, Judge.
The manager of a motel heard a disturbance in one of the rooms under his charge and summoned the police. They responded and knocked on the door of the room. When Banks opened the door, one of the officers looked past him into the room and saw a woman sitting on the bed. Only the light from a nearby bathroom illuminated the room. Straddling the doorway for “safety purposes”, the officer scanned the interior and spied two cans just beside the bed about 8 to 15 feet inside the room.
At a motion to suppress hearing later, the officer testified that he immediately thought the cans looked like “crack cocaine cans”. He saw no evidence of cocaine from where he stood. The cans had a bent top, and there was something lying on the top. He could not tell what the substance was. Crack cocaine, he testified, is often smoked through puncture holes placed in the top of similar cans. Acting on this information, the officer entered the room, inspected the cans, and arrested Banks. Upon searching him, the officer then found a rock of crack cocaine. He was charged with possession of cocaine and drug paraphernalia, to which he pled no contest after the judge denied his motion to suppress. This appeal followed.
At the suppression hearing, the woman sitting on the bed testified that Banks let the officer into the opening into the room. She also said that after the officers came into the room they picked up the bed and *834 found the cans. The trial court concluded that the officer was lawfully on the threshold and, the cans being in “plain view”, the officer had probable cause to believe that a misdemeanor had been committed in his presence. There is no evidence, nor any contention, that the occupants of the room consented to any search.
The propriety of the outcome turns on what the officer says he saw when he straddled the doorway “for safety purposes.” The only thing, he testified, that caught his attention was the two cans. He admitted that he saw no cocaine. And while he says that similar cans with puncture holes in the top are often used to smoke crack cocaine, he saw no puncture holes in these cans. The only thing he could say about them was that he noticed “something on top of the cans.”
We lay aside any question about the officer’s being in a place where he had a right to be, by accepting the finding of the trial court, as we must, that the officer was granted permission to enter — at least, to the extent of straddling the doorway. Byrd v. State, 481 So.2d 468 (Fla.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2261, 90 L.Ed.2d 705 (1986); Baggett v. State, 494 So.2d 221 (Fla. 1st DCA 1986). Hence the issue turns on whether the evidence establishes that it was “immediately apparent to the police that the items that they observe[d] may be evidence of * * * contraband, or otherwise subject to seizure.” Baggett, 494 So.2d at 222.
Taking the officer’s testimony (and, indeed, the court’s finding) in a light most favorable to the state, we conclude that the evidence is non-existent that what the officer saw in plain view was evidence of contraband. As he himself said, he saw no evidence of cocaine itself, and he could not see any holes (or punctures) on the tops of the cans. Even more importantly, he could not see what the substance was on the top of the cans and had no idea what it was:
Q. And were you able to recognize any holes, other than the top of the can which was normally punctured, were you able to notice any holes from your advantage [sic-vantage?] point at that doorway?
A. I noticed there was something on the top of it. I couldn’t tell you what it was.
Q. You couldn’t say one way or another?
A. No, sir.
Q. And once you got into the room, were you able to determine they had puncture holes in them?
A. I knew something was — something was there, but I couldn’t determine what it was. Once I got close enough, then I knew what it was.
Q. And at no time did Mr. Banks invite you into the room, is that correct?
A. No, sir.
R. 23-24. This testimony amounts to little more than that the officer saw cans in the room. Whatever else we might think about the ordinary things of everyday life that find their way into the drug culture, we cannot say that this testimony is enough to allow the power of the state to insinuate itself into a man’s room and go rummaging for contraband.
We therefore reverse the trial court’s denial of the motion to suppress and remand for proceedings not inconsistent.
REVERSED AND REMANDED.
STONE, J„ and WALDEN, JAMES H., Senior Judge, concur.